# UNITED STATES DISTRICT COURT
## NORTERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE BERRY | ) | CASE NO. |
| c/o Hux Law Firm, LLC | ) | |
| 3 Severance Circle #18147 | ) | JUDGE: |
| Cleveland Heights, OH 44118 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| BRICKLAYERS AFL-CIO | ) | |
| LOCAL UNION 5 | ) | **JURY DEMAND ENDORSED** |
| c/o Paul Shymske | ) | **HEREIN** |
| 6200 Rockside Woods Blvd. N, Ste. 210 | ) | |
| Independence, OH 44131 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jacqueline Berry, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Plaintiff Jacqueline Berry is a resident of Brecksville in Cuyahoga County, State of Ohio.

2. Bricklayers AFL-CIO Local Union 5 ("Local 5") is a labor union with its principal place of business located at 6200 Rockside Woods Blvd. N, Ste. 210 Independence, OH 44131.

## JURISDICTION AND VENUE

3. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendant operates and conducts business.

4.  Prior to instituting this action, Berry filed a charge of discrimination with the the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2018-00117, alleging that Defendant and its agents had harassed and subjected her to disparate treatment because of her gender ("EEOC Charge").

5.  On or about May 04, 2020, the EEOC mailed a Notice of Right to Sue to Berry.

6.  A true and accurate copy of Berry's Notice of Right to Sue is attached as Exhibit 1.

7.  Berry has properly exhausted her administrative remedies pursuant to 29 U.S.C. § 626(e).

8.  This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.


## FACTS

9.  Berry is a former employee of Local 5.

10. In or around June 2016, Local 5 hired Berry as an office secretary.

11. During her employment with Local 5, Berry had multiple conversations with members of the executive board about her wages.

12. In or around June 2017, Berry had a conversation with Joe Coreno, president of Local 5, and Dennis Rahe, the financial secretary of Local 5.

13. At some point during the conversation, Coreno, Rahe, and Berry discussed unemployment benefits and the weekly benefit amount.

14. Coreno stated that he believed no one could survive on the weekly benefit amount.

15. Berry informed Coreno that her compensation was about the same as the weekly benefit amount.

16. Coreno amended his statement to state that no man could survive on that amount of money.

17. Coreno believed that only men deserved enough money to be able to survive.

18. Coreno believed that Berry's low salary was justified because she was a woman.

19. At some point, Berry discovered that Rahe was paid at a significantly higher rate than her.

20. Rahe was paid at a significantly higher rate than Berry even though they performed the same secretarial duties ("Pay Gap").

21. Based on Coreno's previous statement that men couldn't survive at a rate of pay similar to Berry's, she reasonably believed that Pay Gap was because of her gender.

22. Soon after she learned of Pay Gap, Berry complained to Coreno in writing about Pay Gap.

23. On or about July 20, 2017, after not receiving any clarification about Pay Gap, Berry informed Rahe that she would like to sit down and discuss Pay Gap ("Discrimination Complaint").

24. On or about July 20, 2017, after Berry sent Discrimination Letter, Local 5 informed Berry that she would no longer have access to the main computer.

25. Berry needed access to the main computer to perform the day-to-day functions of her job.

26. Coreno also informed Berry her duties would be changing.

27. The changes Coreno forced on Berry essentially demoted her so that she was Rahe's personal assistant.

28. At no time previously had Berry been a personal assistant to anyone at Local 5.

29. On or about July 28, 2017, Berry re-sent Discrimination Complaint to Coreno after he claimed he did not receive it previously.

30. On or about August 7, 2017, Berry received a letter from Local 5's attorney that supposedly explained why her duties were being changed, and why Pay Gap was justified ("Justification Letter").

31. Later that day, Rahe hand-delivered Justification Letter to Berry and asked for Berry's passwords for her computer, email, and website access.

32. On or about August 9, 2017, just two days after Justification Letter, Local 5 terminated Berry's employment in a letter from Local 5's attorney ("Termination Letter").

33. On or about August 9, 2017, prior to receiving Termination Letter, Berry had a meeting with Coreno and Rahe.

34. In the meeting, Berry repeatedly told Coreno and Rahe that she wanted to be treated fairly.

35. Coreno repeatedly asked Berry what she wanted from Local 5.

36. When Berry asked if she was allowed to ask to be treated fairly, Coreno told her, "No, not that way."

37. The "that way" that Coreno was referring to was Discrimination Complaint.

38. Coreno believed that Discrimination Complaint was an inappropriate way to complain about gender discrimination in the workplace.

39. Berry was terminated in retaliation for Discrimination Complaint.

40. On or around October 23, 2017, Berry filed EEOC based on her termination after Discrimination Complaint.

41. Throughout her employment with Local 5, Berry was also working with Tile Layers Local 36.

42. After she was terminated from Local 5, Berry continued her employment with Local 36.

43. Local 36 had an oral agreement to sublease office space from Local 5 during this time.

44. On or about January 19, 2018, Coreno sent a letter to Local 36 terminating the lease agreement.

45. Coreno ended the lease in an effort to further retaliate against Berry for filing EEOC Charge.

46. On or about January 28 ,2020, the EEOC determined that there was reasonable cause to state that Local 5 retaliated against Berry for engaging in protected activity by discharging her, in violation of Title VII and the Equal Pay Act ("Determination Letter").

4

47.  Determination Letter also stated that Local 5 failed to maintain personnel and employment records in accordance with the Commissions' Procedural Regulations in violation of Title VII.

48.  A true and accurate copy of Determination Letter is attached as Exhibit 2.

## COUNT I: GENDER DISCRIMINATION (FEDERAL)

49.  Berry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

50.  Local 5 was an employer as defined by Title VII.

51.  Throughout her employment, Berry was fully competent to perform her essential job duties.

52.  Local 5, by and through its agents, treated Berry differently than other similarly situated employees based on her gender.

53.  Specifically, Local 5 created an environment where discrimination on the basis of gender was cultivated.

54.  Local 5's encouragement of the environment was made evident in its response to Berry's Discrimination Letter, and in Coreno's statement regarding compensation for women and men in the workforce.

55.  Local 5 violated Title VII by discriminating against Berry due to her gender.

56.  As a direct and proximate cause of Local 5's wrongful conduct, Berry has suffered and will continue to suffer damages.

## COUNT II:  RETALIATORY DISCRIMINATION (FEDERAL)

57.  Berry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

58. As a result of the Local 5's discriminatory conduct described above, Berry complained about the gender discrimination she was experiencing when she submitted Discrimination Letter.

59. Subsequent to Berry's reporting of Discrimination Letter to her supervisor, employer, and filing an EEOC complaint, Berry's duties were drastically increased to the point where it made it virtually impossible to do her job.

60. Local 5 further retaliated against Berry by terminating her employment and ending a lease agreement with Local 36 in an effort to damage her employment relationship.

61. Local 5's actions were retaliatory in nature based on Berry's opposition to the unlawful discriminatory conduct.

62. Thus, Local 5's actions violated 42 U.S.C § 2000e-3(a).

63. As a direct and proximate cause of Local 5's retaliatory discrimination against and termination of Berry, she suffered and will continue to suffer damages.

## COUNT III: GENDER DISCRIMINATION (STATE)

64. Berry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

65. Local 5 was an employer as defined by R.C. § 4112.01(A)(2).

66. Berry was an employee as defined by R.C. § 4112.01(A)(2).

67. Throughout her employment, Berry was fully competent to perform her essential job duties.

68. Local 5, by and through its agents, treated Berry differently than other similarly situated employees based on her gender.

69. Specifically, Local 5 created an environment where discrimination on the basis of gender was cultivated.

70. Local 5's encouragement of the environment was made evident in its response to Berry's Discrimination Letter, and in Coreno's statement regarding compensation for women and men in the workforce.

71. Local 5 violated Ohio Revised Code § 4112.02(A) by discriminating against Berry due to her gender.

72. As a direct and proximate cause of Local 5's wrongful conduct, Berry has suffered and will continue to suffer damages.

## COUNT IV:  RETALIATORY DISCRIMINATION (STATE)

73. Berry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

74. Subsequent to Berry's reporting of Discrimination Letter to her supervisor, employer, and filing an EEOC complaint, Berry's duties were drastically increased to the point where it made it virtually impossible to do her job.

75. Local 5 further retaliated against Berry by terminating her employment and ending a lease agreement with Local 36 in an effort to damage her employment relationship.

76. Local 5's actions were retaliatory in nature based on Berry's opposition to the unlawful discriminatory conduct.

77. Thus, Local 5's actions violated R.C. §4112.02(I).

78. As a direct and proximate cause of Local 5's retaliatory discrimination against and termination of Berry, she suffered and will continue to suffer damages.

## COUNT V: VIOLATION OF THE EQUAL PAY ACT

79. Berry restates each and every prior paragraph of this Complaint, as if it were fully

restated herein.

80. The Equal Pay Act protects against wage discrimination based on sex where the jobs being compared must require substantially equal skill, effort, and responsibility and be performed under similar working conditions within the same establishment.

81. The Equal Pay Act also prohibits employers from retaliating against employees who assert claims of violations under the Equal Pay Act.

82. During all times material to this Complaint, Berry was a covered employee entitled to individual protection of the Equal Pay Act.

83. During all times material to this Complaint, Local 5 was a covered employer required to comply with the Equal Pay Act's mandates.

84. Subsequent to Berry's reporting of Discrimination Letter to her supervisor, employer, and filing an EEOC complaint, Berry's duties were drastically increased to the point where it made it virtually impossible to do her job.

85. Local 5 further retaliated against Berry by terminating her employment and ending a lease agreement with Local 36 in an effort to damage her employment relationship.

86. As a direct and proximate result of Defendants' failure to pay Berry her lawfully earned wages, Berry suffered damages.


**COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

87. Berry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. Local 5 intended to cause Berry emotional distress or knew that their acts or omissions would result in serious emotional distress to Berry.

89. Local 5s' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

90. As a direct and proximate cause of Local 5's acts and omissions as set forth above, Berry has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

91. As a direct and proximate cause of Local 5's conduct and the resulting emotional distress, Berry has suffered and will continue to suffer damages.


## **DEMAND FOR RELIEF**

WHEREFORE, Berry demands from Local 5 the following:

(a)  Issue a permanent injunction:

    (i)  Requiring Local 5 to abolish discrimination, harassment, and retaliation;

    (ii)  Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)  Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b)   Issue an order requiring Local 5 to restore Berry to expunge her personnel file of all negative documentation;

(c)   An award against each Local 5 of compensatory and monetary damages to compensate Berry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages;

(d)   An award of punitive damages against each Local 5 in an amount in excess of $75,000;

(e)   An award of liquidated damages equal to the amount of back pay awarded to Berry.

(f)   An award of reasonable attorney's fees and non-taxable costs for Berry claims as allowable under law;

(g)   An award of the taxable costs of this action; and

(h)   An award of such other relief as this Court may deem necessary and proper.


Respectfully submitted,


James J. Hux (0092992)
**HUX LAW FIRM, LLC**
3 Severance Circle #18147
Cleveland Heights, Ohio 44118
Phone: (937) 315-1106
Fax:    (216) 359-7760
Email: jhux@huxlawfirm.com

*Attorney for Plaintiff Jacqueline Berry*

## **JURY DEMAND**

Plaintiff Jacqueline Berry demands a trial by jury by the maximum number of jurors permitted.

_____

James J. Hux (0092992)